UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BOWEN,

       Plaintiff,                         CIVIL ACTION NO. 08-12877

       v.                                DISTRICT JUDGE AVERN COHN

MICHIGAN DEPARTMENT        MAGISTRATE JUDGE MARK A. RANDON
OF CORRECTIONS, SGT. PAUL
ALLEN, and PATRICIA CARUSO,

       Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT ALLEN'S MOTION FOR SUMMARY JUDGMENT (DKT NO. 39) AND TO DISMISS PLAINTIFF'S LAWSUIT WITH PREJUDICE

**I. INTRODUCTION**

Plaintiff, David Bowen, is a former inmate of the Michigan Department of Corrections ("the MDOC"). While incarcerated, Plaintiff filed this action under 42 U.S.C. §1983 against the MDOC and Paul Allen, alleging violations of his constitutional rights (Dkt. No. 1). The matter presently before the Court is Allen's motion for summary judgment. (Dkt. No. 39)

Allen moves for dismissal on three grounds: (1) that Plaintiff failed to exhaust his administrative remedies; (2) that Plaintiff's official capacity claims against him are barred by Eleventh Amendment immunity; and (3) that Plaintiff's individual capacity claims against him are barred by qualified immunity. The matter was referred to the undersigned for all pre-trial

purposes (Dkt. No. 7, 33), and Plaintiff filed a timely response to Allen's motion. Since the undersigned finds that Plaintiff has failed to exhaust his administrative remedies, it is RECOMMENDED that Allen's motion be GRANTED on this ground, rendering the others moot. It is also RECOMMENDED that any remaining defendants be dismissed and that Plaintiff's entire lawsuit be DISMISSED WITH PREJUDICE.

## II. BACKGROUND

### A.  *Relevant Facts*

At all times relevant to this case, Plaintiff was an inmate housed at the Southern Michigan Correctional Facility ("JMF").[1] Plaintiff complains that on July 18, 2007, Allen, then a Lieutenant at JMF, forced Plaintiff to move to a cell on an upper floor, despite Plaintiff's medical detail for a ground floor cell. (Dkt. No. 1) Plaintiff alleges that he showed Allen his medical detail, but Allen told him he had to move as directed, or go to segregation. Plaintiff complied; but within a few days of moving to an upper floor cell, he fell down 26 steps and injured his back. (Dkt. No. 1) Plaintiff's complaint seeks compensatory damages and injunctive relief. (Dkt. No. 1)

### B.  *Procedural History Regarding Service*

On August 20, 2008, a waiver of service was docketed on behalf of the MDOC. (Dkt. No. 8) The waiver was directed to Patricia Caruso, the MDOC's Director but, apparently, was not intended to seek her personal waiver of service because Plaintiff's Complaint did not name Caruso as a Defendant. (Dkt. No. 1) On August 22, 2008, Caruso nevertheless filed a motion to

---

[1] Plaintiff was released from custody on April 30, 2009. (Dkt No. 39, p. 2)

dismiss alleging *inter alia* that she was not a named defendant and Plaintiff had failed to state a claim against her upon which relief could be granted.[2] (Dkt. No. 12) In response, Plaintiff submitted a letter requesting to add defendants (presumably Caruso). (Dkt. No. 14) After giving Plaintiff an opportunity to submit a proposed amended complaint naming other defendants (Dkt. No. 16), Magistrate Judge Pepe filed a report and recommendation to dismiss claims against Caruso, with the exception any potential claim against her for prospective injunctive relief. (Dkt. No. 22) Plaintiff failed to file a proposed amended complaint and the district judge adopted the report and recommendation. (Dkt. No. 23) Allen was subsequently served via a waiver of service on September 24, 2009, and filed the instant responsive pleading on November 19, 2009.

### C.     *The MDOC's Grievance Procedure*

The MDOC provides prisoners with a method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 39, Ex. D). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

---

[2] It appears that Assistant Michigan Attorney General Christine Campbell believed that the waiver of service entered on behalf of the MDOC **was** directed to Caruso personally – not the MDOC. (Dkt. No. 11, p. 1. n. 1) This explains why, to date, no appearance has been filed by the Michigan Attorney General on behalf of the MDOC. However, as discussed below, it is recommended that both the MDOC and Caruso be dismissed, resolving any outstanding service issues.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. A prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received. Section B of the Policy provides that a grievance is fully exhausted "only when filed as a grievance **through all three steps of the grievance process** in compliance with this policy." (Emphasis added). In addition, as it relates to what should be included in a grievance, the Policy requires, in part, that prisoners adhere to the following procedural rules:

> R. The issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates times, places, and **names of all those involved in the issue being grieved are to be included**.
> (Emphasis added).

## D. *Plaintiff's Grievance*

As it relates to his complaint allegations against Allen, Plaintiff filed a single grievance relating to his fall. Specifically, grievance JMF 07080124303F ("the Grievance") read, in its entirety as follows:

> On July 25, I was going to come down stairs and I missed the railing because of the distance. I fell forward hitting my head. And then I rolled down the rest of the way. I hit my back three times.

(Dkt. No. 39, Ex. B).

The Grievance did not name or allege any wrongdoing against Allen.[3] The Step I response to the Grievance was provided by the JMF's Resident Unit Manager, and indicated that Plaintiff had been provided with an elevator detail and the matter was considered closed. There is no record that Plaintiff filed an appeal at step II and the MDOC's list of exhausted prisoner complaints does not include the Grievance. (Dkt. No. 39, Ex. C). Plaintiff did attach two exhausted grievances to his Complaint (Dkt. No. 1), but they related solely to his efforts to be seen by medical staff for back pain and "tremors" in his hands in 2008 (and made no mention of Allen).

### III. ANALYSIS

*A.     Standard of Review*

*1.     Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(a)*

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle,* 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific

---

[3] The Grievance did state, on the section of the grievance form seeking notation of attempts made to resolve issue prior to writing the grievance, that Plaintiff "went to the counselor and asked to be moved because [he] had a special accomodation(sp) notice." However, since Allen never served as a counselor at JMF (Dkt. No. 41, ¶ 1), this notation could not have been referring to Allen.

constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266 (1994). However, prisoner suits, alleging constitutional deprivations while incarcerated, are subject to the additional prerequisite of satisfying the administrative exhaustion requirements of 42 U.S.C. § 1997e(a). *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

## B.     *The Prison Litigation Reform Act*

### 1.     *The Meaning and Purpose of Proper Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U. S. C. § 1997e(a). The Supreme Court defines proper exhaustion as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) quoting, *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002). As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> The benefits of exhaustion can be realized only if the prison
> grievance system is given a fair opportunity to consider the
> grievance. The prison grievance system will not have such an
> opportunity unless the grievant complies with the system's critical
> procedural rules. A prisoner who does not want to participate in
> the prison grievance system will have little incentive to comply
> with the system's procedural rules unless noncompliance carries a
> sanction.

*Woodford,* 548 U.S. at 95. Therefore, a grievance that is not advanced through Step III of the Policy does not fulfill the PLRA's exhaustion requirement. *See, Sullivan v. Kasajaru*, 316 Fed.Appx. 469, 2009 WL 650248 (6th Cir. 2009) (affirming the district court's dismissal of individual defendants, where the plaintiff's grievance failed to specifically name them as required by the Policy).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court overturned the Sixth Circuit's total exhaustion rule and its requirement that prisoners specifically plead exhaustion in their complaints. However, like the instant motion, failure to exhaust may still be raised as an affirmative defense.

### 2. *Plaintiff Failed to Exhaust his Administrative Remedies*

Plaintiff did not pursue the Grievance through Step III of the Policy and failed to name, physically describe, or allege any wrongdoing against Allen. Plaintiff does not dispute these findings, arguing instead that, as a former prisoner, he is no longer subject to the exhaustion requirement and that he is seeking relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 (Dkt. No. 42, p. 2). Both arguments lack merit. The Sixth Circuit has held that the PLRA's requirements apply to a prisoner who failed to exhaust his administrative remedies

even though not in custody at the time a motion to dismiss for failure to exhaust was filed. *Cox. v. Mayer*, 332 F.3d 422 (6th Cir. 2003). Also, it is equally clear that an ADA claim filed by a prisoner is also subject to the PLRA's exhaustion requirement. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001); *Chamberlain v. Overton*, 326 F.Supp.2d 811, 815-16 (E.D. Mich 2004) ("Plaintiff was not relieved of his duty to exhaust his administrative remedies as to the prison conditions which he asserts violate the ADA").[4] Therefore, Plaintiff failed to exhaust his administrative remedies and Allen's motion for summary judgment should be granted.

### C.  *The MDOC Should be Dismissed*

Pursuant to 28 U.S.C. § 1915(e)(2),[5] the MDOC should also be dismissed. The Eleventh Amendment provides states immunity from suit by private citizens in federal courts. *Lawson v. Shelby County, Tennessee*, 211 F.3d 331 (6th Cir. 2000). There are only three qualified

---

[4] Plaintiff's two exhausted grievances pertaining to his efforts to be seen by medical staff do not exhaust a potential ADA claim. Any purported claim of discriminatory treatment **because of his disability** arises from JMF's failure to accommodate his ground floor detail – not his alleged failure to receive proper medical care. The two exhausted grievances do not, in any way, even imply that his failure to receive treatment was because of a disability. (Dkt. No. 1, Ex.)

[5] 28 U.S.C. § 1915(e)(2) provides, in pertinent part:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
. . .
(B) the action or appeal –
. . .
(ii) fails to state a claim upon which relief may be granted . . . .

On July 16, 2008, Plaintiff's application to proceed without prepayment of fees was granted. 28 U.S.C. § 1915(a)(1). (Dkt. No. 4)

exceptions to this grant of immunity. First, the grant of immunity may be waived by the state; second Congress may, in certain constitutionally mandated circumstances, abrogate the states' immunity through statute, and third "a federal court may enjoin a 'state official' from violating federal law." *Id. at 334-335* (citing *Ex parte Young*, 209 U.S. 123 (1908)).

The state of Michigan has not consented to be sued for civil rights actions in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986), and § 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Additionally, the language of § 1983 itself does not permit suits against a state or its agencies, such as the MDOC. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989). Therefore, Plaintiff has failed to state a claim upon which relief may be granted under § 1983, regarding his claims against the MDOC.

### D.     *Any Claims for Prospective Injunctive Relief Against Caruso Should be Dismissed*

With the exception of prospective injunctive relief, § 1983 claims against state officials in their official capacity are also barred by the Eleventh Amendment as claims against the state itself. *Will*, 491 U.S. at 71. Therefore, the district judge dismissed any claims against Caruso, with the exception of any potential claim for prospective injunctive relief. (Dkt. No. 23) In determining whether a complaint states a claim against a state official for prospective injunctive relief, the reviewing court should conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring). In making this inquiry, the court should not analyze the merits of the claim.

*Verizon Maryland Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 646 (2002). Moreover, "while pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, No. 90-1850, slip op. at 1-2 (6th Cir. Oct. 9, 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Here, in an uncomplicated order, Plaintiff was afforded an opportunity to amend his complaint but failed to do so. (Dkt. No. 16) Further, since Plaintiff is no longer incarcerated, there is no ongoing violation of law to enjoin and, thus, granting leave to amend would be futile. Therefore, Plaintiff has also failed to state a claim for injunctive relief against Caruso.[6]

### III.  CONCLUSION

Fore the foregoing reasons, it is RECOMMENDED that Allen's motion for summary judgment (Dkt. No. 39) be granted; that the MDOC and any claim for prospective injunctive relief be dismissed; and that Plaintiff's entire lawsuit be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

---

[6] Again, it is not clear that Caruso is even a party to this lawsuit.

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                      S/Mark A. Randon
                                      Mark A. Randon
                                      United States Magistrate Judge

Dated: February 22, 2010

## Certificate of Service

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 22, 2010, by electronic and/or ordinary mail.

                                      S/Barbara M. Radke
                                      Judicial Assistant